## DYAR et al. v. DYAR et al.

1. Where one ground of caveat to a paper propounded as a will is mental incapacity of the testator to make a will, a non-expert witness may give in evidence his opinion as to whether the testator at the time of making the will had "mental capacity to know who his children were," where the witness also testifies as to his acquaintance and association with and observation of the testator.

(a) Where a witness is on cross-examination it is not necessary to state to the court what answer is expected to a question propounded to the witness.

(b) There being two grounds of caveat, the first relating to general mental incapacity to make a will and the second relating to monomania or insanity on a particular subject, the error in refusing to allow the witness to express on opinion as to the testator's mental capacity to know who his children were, when asked with reference thereto by the propounder, was not cause for reversal of the judgment denying the propounder a new trial, the judge in his charge to the jury having practically restricted consideration to the second ground of caveat.

2. On the trial of an issue as to general mental incapacity to make a will, a subscribing witness to the paper propounded as a will may give in evidence his opinion as to whether the testator at the time of executing the paper appeared "to have sense enough to know who his children were," with or without stating any other facts on which his opinion was based. For reasons stated in the first division, the rejection of evidence as above indicated was not cause for a reversal.

3. The caveat related to the original paper executed as a will in 1900, and to a codicil executed in 1912. There was evidence tending to show that at the time of executing both papers the testator was afflicted with monomania as alleged in ground two of the caveat, and that such condition of mind was induced by the use of alcoholic liquor. In connection with such evidence it was competent for a witness to testify that he had been express agent at a stated interval between the dates above indicated, and that during such time the testator usually came to the express office to get shipments of liquor.

4. The allegation of monomania, in the second ground of the caveat as cause for denying probate of the will, was sufficient pleading to authorize the admission of evidence as to the use of alcoholic liquors as tending to produce monomania, without making any specific allegation as to the use of such liquors.

5. In connection with other evidence, testimony to the effect that the testator was in the habit of drinking whisky in the years 1888 and 1889 was admissible.

6. If there was any error in allowing a witness for the caveators to testify

Appeal and Error 4 C. J. pp. 997, n. 86; 998, n. 92; 1018, n. 65.

Evidence 22 C. J. pp. 599, n. 42; 601, n. 71; 602, n. 84.

Trial 38 Cyc. pp. 1330, n. 71; 1673, n. 41.

Wills 40 Cyc. pp. 1023, n. 29; 1025, n. 47; 1271, n. 51; 1335, n. 73; 1336, n. 78, 80.

that the testator became an excessive user of intoxicants, over the objection that it was the expression of a mere conclusion of the witness, such error was not cause for a reversal; the opinion of the witness having relation only to a collateral matter, and the witness having testified to facts which tended to show excessive use.

7. When considered in connection with its context, the judge did not err in the charge: "Old age, and the weakness of intellect resulting therefrom, does not of itself constitute incapacity. If that weakness amounts to imbecility, the testamentary capacity is gone. In cases of doubt as to the extent of this weakness, the reasonable or unreasonable disposition of the estate should have much weight in the decision of the question," The charge was properly adjusted to the pleadings and evidence.

8. The court did not err in charging: "You look to all the evidence introduced before you, and determine whether or not the will offered herein was executed by Jonathan P. Dyar on account of regular or intermittent drinking of intoxicating liquors or any other cause, to an extent that his mind became unsettled so far as it related to his natural love and affection or duty to his daughters, and whether or not the will expressed the excited vagaries of a drunkard, instead of the rational desire of a man disposing of his property to his relatives. If you find that the will does not express such rational desire, then you would find against the will."

9. The court charged: "On the propounding of the will where the question is insanity or monomania, the reasonableness or unreasonableness of the disposition of property by a will is always a question to be considered by the jury, and while, in and of itself, an unnatural or unreasonable disposition of his property by testator would not be sufficient to set aside a will, yet where the evidence raises a doubt in the minds of the jury as to the extent of the weakness of intellect of the testator, the reasonable or unreasonable disposition of the estate *should have weight* in the decision, of the question." This charge was not erroneous on the ground that it amounted to an expression of an opinion on the facts of the case, nor was it erroneous for any other reason assigned.

10. The evidence authorized the verdict, and the judge did not err in refusing a new trial.

No. 4638.   JANUARY 23, 1926.

Appeal. Before Judge Tarver. Bartow superior court. September 13, 1924.

*M. B. Eubanks, G. H. Aubrey, Neel & Neel,* and *Hamilton Mc-Whorter Jr.,* for plaintiffs.

*John T. Norris* and *Maddox, Matthews & Owens,* for defendants.

ATKINSON, J.   Jonathan P. Dyar Sr., seventy-eight years old died on July 18, 1923, leaving a widow, three sons, and four daughters. A paper purporting to be the last will and testament of the deceased, dated November 24, 1900, and another paper dated April 1, 1912, purporting to be a codicil to the will, were offered for probate in the court of ordinary. No provision was made for

three of the daughters. Their names were not mentioned in the paper. The name of the other daughter was mentioned, and direction was given that in specified contingencies the net income from certain property should be given to her, and at her death the corpus should go to Mercer University. Except as thus indicated, the estate was left to the widow and three sons under a stated plan of distribution. A caveat was interposed by the four daughters, on the grounds (1) of general mental incapacity to make a will, (2) monomania in relation to marriage by the daughters, causing the testator to exclude the daughters from benefits under the will. The monomania was alleged to consist of an insane delusion and hallucination that any daughter of the testator who married "thereby made a choice between him and the man she married, and forever cut off any relationship with him and was no longer his daughter." The second ground of caveat contained other allegations which in effect was a statement of facts which if proved would tend to show monomania, as above indicated. Probate was denied in the court of ordinary, and the case was carried to the superior court by appeal. At the trial on appeal a verdict was returned finding in favor of the caveators. The propounders' motion for a new trial was overruled, and they excepted.

1. The eighth ground of the motion (as amended) for a new trial is as follows: "While the witness J. A. Price was under cross-examination, he was asked by counsel for propounder the following question: 'He [testator] had the mental capacity to know who his children were?' Counsel for caveators objected on the ground that the question called for a conclusion, which objection the court sustained. Movants say that the court erred in sustaining the objection to the question asked, and refusing to allow the witness to answer same, for the reason that the witness had shown by his testimony that he had known testator since the year 1875. He talked with him frequently, had business dealings with him, and that in the year 1900 he had the mental capacity to know what property he had, and that he had never seen him at any time when he did not think he had the mental capacity to transact the business of life, and had fully qualified to give his opinion as a non-expert on the testator's mental capacity, or any phase thereof." It is insisted in the brief of the attorney for defendants in error that this ground of the motion for a new trial is

incomplete, because it appears that the witness did not answer the question and it is not shown what answer was expected to be given. As the witness was on cross-examination, it was not necessary to state what answer was expected. *Bell* v. *Felt,* 119 *Ga.* 498 (46 S. E. 642). The rulings in *Clare* v. *Drexler,* 152 *Ga.* 419 (110 S. E. 176), and *Colbert* v. *Pitner,* 157 *Ga.* 690 (5, 7) (122 S. E. 315), relating to allowance of questions asked witnesses on direct examination, are not applicable to this case. On issues as to sanity and as to mental capacity to make a will it has been held that a non-expert witness may give in evidence his opinion on the question, where he states the facts on which the opinion is based. Civil Code (1910), § 5874; *Choice* v. *State,* 31 *Ga.* 424 (5); *Frizzell* v. *Reed,* 77 *Ga.* 724 (5); *Proctor* v. *Pointer,* 127 *Ga.* 134 (2) (56 S. E. 111); *Slaughter* v. *Healh,* 127 *Ga.* 747 (57 S. E. 69, 27 L. R. A. (N. S.) 1); *Glover* v. *State,* 129 *Ga.* 717 (5) (59 S. E. 816); *Mosley* v. *Fears,* 135 *Ga.* 71 (68 S. E. 804). See also *Hubbard* v. *Rutherford,* 148 *Ga.* 238 (96 S. E. 327); *Harris* v. *State,* 155 *Ga.* 405 (4) (117 S. E. 460); *Compton* v. *Porterfield,* 155 *Ga.* 480 (117 S. E. 464). By analogy such witness may, on an issue as to mental capacity to make a will, give in evidence his opinion as to whether the testator had sense enough to know who his children were, where he states facts upon which the opinion was based. The witness testified that he lived in the same town with testator, and had known him intimately since 1875; had talked with him frequently, and had opportunity to observe his conduct and attitude towards his children. This was sufficient to authorize the witness to give in testimony his opinion as to the testator's ability to know "who his children were." It was erroneous to refuse to allow the question answered; but the error will not require a reversal, because the testimony would have been of slight materiality, and related only to the issue as to general mental capacity to make a will, as alleged in the first ground of the caveat, which was practically excluded by the charge of the court as ground for denying probate of the will.

2. The fourth ground of the motion is as follows: "While the witness T. R. Turner, one of the subscribing witnesses to the will, was being examined in chief, counsel for propounder asked the witness the following question: 'Now, at the time he made this will, did he or not appear to have sense enough to know who his

children were?'—to which the witness answered 'Why, sure.' To this question counsel for caveators objected, and moved to exclude the question and answer, on the ground that it called for a conclusion, which objection the court sustained. Movants say that this ruling of the court in sustaining said objection and excluding the question and answer was an error requiring a new trial, for the reason that said question and answer were relevant, material, competent, and pertinent to the issue in the case; that the witness testifying was one who had almost a lifelong acquaintance and dealings with the testator, and had so testified. He was a subscribing witness to the will, and knew the testator intimately and well, and had considerable business dealings with him, and was competent, both as a subscribing witness and as a non-expert giving the facts upon which he based his testimony, to give his opinion as to the mental condition and capacity of the testator to know who his children were, or as to any phase of such mental capacity at the time of the execution of the will and at the time testified to by the witness." The exclusion of the testimony was erroneous for reasons stated in the preceding division. Moreover, the witness, being a subscribing witness to the will, could give his opinion as to the matter inquired about, without stating the facts on which his opinion was based. *Scott* v. *McKee*, 105 *Ga.* 256 (2) (31 S. E. 183). But, for reasons indicated in the first division, the error in repelling the evidence is not cause for reversal.

3. The fifth ground of the motion was: "While the witness W. P. Martin, for propounder, was being examined on a cross-examination by caveators' counsel, he was asked this question: 'Mr. Dyar usually came there [to the express office] to get shipments of liquor, didn't he?' This question was objected to by counsel for propounder, on the ground that it was immaterial and irrelevant, and because there was no pleading to authorize any such evidence, which objection the court overruled, and permitted the witness to testify that he delivered whisky to testator at the express office at Adairsville, Georgia. Movants say that said ruling admitting this testimony as to the testator receiving and consuming intoxicating liquors was error, and that such testimony was irrelevant, immaterial, and incompetent for all the reasons stated, and further because the witness Martin testified that he only became express agent in the year 1905, and the whisky deliv-

ered after he became express agent, which was some five years or more after the execution of the will." The testimony, considered in connection with other evidence as to diseased condition of the testator's mind caused by use of intoxicating liquor, was admissible as tending to support the second ground of caveat alleging monomania of the testator as cause for denying probate of the will and codicil, the former having been executed in 1900 and the latter in 1912.

4. The sixth ground of the motion complains of the admission of the following question and answer: "What did he [testator] say at that time about his drinking?" Answer: "He told me about what he drank; it was around 16 ounces a day." The evidence was admitted over objection that "there were no pleadings to authorize such evidence and no allegations with reference to either drunkenness at the time, or impairment of the mind of deceased on account of the use of liquor." This testimony, considered in connection with other evidence, tended to show that the testator at the time of making the will was afflicted with monomania as alleged in the second ground of the caveat, and that such condition of mind was produced by excessive use of intoxicating liquor. It was not necessary to plead the evidence relied on to show the fact of monomania, in order to render such evidence admissible.

5. The seventh ground of the motion complains of the admission of the following question and answer of a witness: "When did he [testator] begin drinking?" Answer: "Can't give you the date; it was something like 18 months or two years before I knew of him drinking any after I went to work for him. The habit grew on him while I remained there." The evidence was admitted over the objection "that it is immaterial, irrelevant, and incompetent, and no pleadings to authorize it." In connection with this testimony the witness testified that he went to work with the testator "along about 1886" and remained until "somewhere in the year 1889." It was not erroneous to admit the testimony over the objections urged.

6. The ninth ground of the motion complains of the admission of the following question and answer of a witness: "Did he [testator] become an excessive user of intoxicants?" Answer: "Yes, sir." The evidence was admitted over the objection that it

was the expression of a conclusion by the witness. The extent to which the testator used intoxicants being only collateral to the main issue, and the witness having given other testimony sufficient to show excessive use of intoxicants, any error in admitting the question and answer in evidence, would not be cause for reversal.

7. The first (special) ground of the motion complains of the following charge: "Old age, and the weakness of intellect resulting therefrom, does not of itself constitute incapacity. If that weakness amounts to imbecility, the testamentary capacity is gone. In cases of doubt as to the extent of this weakness, the reasonable or unreasonable disposition of the estate should have much weight in the decision of the question." The grounds of exception to the charge are: (a) "Because the same was wholly inapplicable to the case on trial, or to any issue made by the pleading therein, or arising upon the evidence before the jury, there being no allegation in the grounds of caveat filed by caveators that the deceased, Jonathan P. Dyar, was, either at the time he executed the writing propounded as his original will or at the time he executed the writing propounded as his codicil to said will, afflicted with old age or with weakness of intellect resulting from old age and amounting to imbecility, or to any lesser degree of weakness of intellect from old age; nor was there any evidence introduced before the jury on said trial showing or tending to show that deceased, at the time he executed either of said written instruments, was, from old age or as a result thereof, afflicted with either mental imbecility or with any weakness of intellect in any degree whatever; and for said reasons said charge was confusing and misleading to the jury ·and calculated to cause or lead them to consider the old age of deceased as a producing cause of mental imbecility or weakness of intellect in him at the time he executed each or either of said written instruments, and to support such conclusion from a consideration by the jury of any unreasonable disposition made or sought to be made by deceased of his estate by said written instruments; all of which was material and hurtful error against the propounders." (b) "Because said charge erroneously assumed by implication, and was calculated to mislead the jury to assume, that the pleadings and evidence in said case authorized the jury to consider, as one of the issues in said case, the question whether, at the time deceased executed the written

instruments propounded as his will and the codicil thereto, he was afflicted with or suffering from old age, or from weakness of intellect resulting therefrom, and, if so, whether such weakness of intellect amounted to imbecility, destroying his testamentary capacity; and upon the aforesaid erroneous assumption further erroneously authorized and required the jury, in case of doubt as to the extent of such weakness of intellect of deceased from the cause aforesaid, to give *much weight* to the reasonable or unreasonable disposition made or sought to be made of his estate by deceased in said instruments propounded as his will and codicil thereto. Movants insisting that under the pleadings and the evidence no issue was made or raised in said case touching the existence of any imbecility or weakness of intellect of deceased at the time he executed either of said instruments, resulting from his old age. (c) In view of the fact that neither in the pleadings nor in the evidence in said case was there any allegation or testimony alleging or showing that at the time deceased executed said instruments or either of them he was afflicted with imbecility or weakness of intellect produced by or resulting from old age, it was error for the court to include in said instruction the words, 'In cases of doubt as to the extent of this weakness, the reasonable or unreasonable disposition of his estate should have much weight in the decision of the question,' because there was no pleading nor any evidence to support or authorize such instruction, and said instruction was calculated to confuse and mislead the jury, and did confuse and mislead them into applying said instruction to the determination of the question of the alleged monomania of deceased at the time he executed said instruments as alleged in the caveat in said case, movants insisting that said above-quoted portion of said instruction, so applied to the determination of the question of such alleged monomania of deceased, would be and was erroneous in that said quoted portion of said instruction so applied conveyed to the jury the opinion or intimation of the opinion of the court that great importance and weight should be given by the jury to the reasonable or unreasonable disposition made by deceased of his estate in said instruments propounded as his will and codicil, in deciding as to whether he was, at the time he executed said instruments, mentally incapacitated to do so on account of being afflicted with *monomania* as alleged in the caveat; movants

insisting that said instruction was an invasion by the court of the exclusive province of the jury to consider and weigh the evidence and draw their own conclusions therefrom, free from the option or intimation of the court as to the weight or importance of such evidence upon the issue as to the existence or non-existence of the alleged monomania of deceased at the time he executed said instruments."

This excerpt from the charge set forth in ground one of the amendment to the motion for new trial is included in the language employed in the Civil Code (1910), § 3841. That section is a rule of evidence, and may be given in charge on an issue of devisavit vel non, without specially pleading such rule, where there is evidence to authorize such charge. The above-quoted excerpt is only a part of the pertinent portion of the charge: "I read to you section 3841 of the Civil Code. Eccentricity of habit or thought does not deprive a person of power of making a testament; old age, and the weakness of intellect resulting therefrom, does not, of itself, constitute incapacity. If that weakness amounts to imbecility, the testamentary capacity is gone. In cases of doubt as to the extent of this weakness, the reasonable or unreasonable disposition of his estate should have much weight in the decision of the question. I charge you that in case of doubt as to the extent of the alleged monomania or partial insanity if it existed, and as to its effect in bringing about the disposition of the testator's property, shown by the will, the reasonableness or unreasonableness of the disposition of his estate should be considered by you in the decision of such question." The evidence tended to show that the testator was 55 years of age when the will was executed in 1900, and 67 years of age in 1912 when the codicil was executed. There was also evidence tending to show that the testator's mind was diseased at the times when the will and codicil were executed, to the extent of showing monomania as alleged in the second ground of caveat, and that the disposition of the property as related to the daughters of the testator was unreasonable. The charge in its entirety shows that the judge was attempting to explain that the jury might consider the reasonableness or unreasonableness of the disposition of the property in determining the main issue as to whether the testator's mind was diseased to the extent of destroying mental capacity to make a will. In these circumstances

whether or not the age of the testator as above stated was sufficient to include him in the "old age" class mentioned in the Code, the reading of the Code section as applied by the judge was not erroneous.

8. The second (special) ground of the motion was as follows: "You look to all the evidence introduced before you and determine whether or not the will offered herein was executed by Jonathan P. Dyar on account of regular or intermittent drinking of intoxicating liquors, or any other cause, to an extent that his mind became unsettled so far as it related to his natural love and affection or duty to his daughters, and whether or not the will expressed the excited vagaries of a drunkard, instead of the rational desire of a man disposing of his property to his relatives. If you find that the will does not express such rational desire, then you would find against the will." The grounds of exception to the charge are: (a) Said instruction was erroneous, because there was no allegation in the caveat of caveators, alleging either the regular or intermittent drinking of intoxicating liquors by deceased at the time of or at any time prior to the execution by him of either of the written instruments propounded in said case as his will or codicil thereto; nor any allegation in said caveat that deceased was, at the time he executed either of said instruments, afflicted with alcoholic insanity, or that the monomania of deceased therein alleged to have existed at the time he executed either of said instruments was induced or brought on or caused by either the regular or intermittent drinking of intoxicating liquors by deceased, or that he was drunk or intoxicated or was a drunkard at the time he executed either of said instruments, or that deceased was in any way mentally incapacitated, by reason of drinking intoxicating liquors either regularly or intermittently, to execute and make either of said instruments as his last will and testament; nor was there any allegation in said caveat referring in any way to the drinking of intoxicating liquors by deceased as a ground for caveating said will, or as producing or contributing cause of the alleged monomania of deceased. (b) Because said instruction erroneously directed the jury to determine from the evidence whether the will in question expressed the excited vagaries of a drunkard instead of the rational desire of a man disposing of his property to his relatives, and that if they should find that the will does not

express such rational desire, then they would find against the will. Said direction and instruction to the jury was error, because the reference therein to 'the excited vagaries of a drunkard' was inapplicable to the case, in that there was no allegation in the caveat, nor any evidence before the jury showing or tending to show, that either at the time deceased executed the original will or at the time he executed the codicil thereto he was a drunkard or afflicted with the vagaries of a drunkard, or that either said will or said codicil expressed the excited vagaries of a drunkard; and for that reason said instruction was unauthorized by law, and was calculated to divert the minds of the jury from the consideration of the real issues in said case, and to lead them to assume that there was some evidence before them tending to show that deceased was, at the time he executed said will or said codicil, a drunkard excited by vagaries and that such vagaries were expressed in said will or codicil, when, as movant insists, no such issue was made by the caveat, nor was there any evidence before the jury to support such a contention. Further, said instruction directing the jury that if they found that the will did not express the rational desire of a man disposing of his property to his relatives, they should find against the will, was error because the same conveyed to the jury, or was calculated to convey to them, the impression that they should find against the will if they should find that it did not *express* the rational desire of a man disposing of his property to his relatives, in the sense and meaning that such desire in order to be rational must be manifested by *expression* in the will showing such disposition of his estate as the jury believes and finds to be a disposition of his estate that is rational in the sense of being reasonable or unreasonable disposition therein made of his estate by deceased, rather than on the ground of his mental capacity or incapacity. (c) Because said instruction required the jury to determine from the evidence whether or not said will was executed by deceased on account of regular or intermittent drinking of intoxicating liquors to an extent that his mind became *unsettled* so far as it related to his natural love, affection, or duty to his daughters, without directing the jury to determine whether such *unsettled* state of mind of said deceased, relative to his natural love, affection, or duty to his daughters, existed at the time the will or codicil was executed, and, if so, in what manner and to what ex-

tent, and especially whether to the extent of destroying the mental capacity of deceased to make said will at the time it was made. Movants insist that without the addition of said omitted directions to the aforesaid instruction, as given, the latter was incomplete, ambiguous, uncertain, and misleading, and was calculated to lead the jury to understand that if they found that on account of the regular or intermittent drinking of intoxicating liquors by deceased his mind at any time became *unsettled* as related to his natural love, affection, or duty to his daughters, this would be sufficient to authorize them to find against the will, which was error, because such *unsettled* state of mind on the part of deceased in relation to his natural love, affection, or duty to his daughters, whether existing at the time said will was executed or at any other time, would not necessarily constitute an insane condition of mind, either partial or general on the part of deceased; an *unsettled* state of mind not necessarily being an insane state of mind. (d) Said instruction was erroneous and requires a new trial, further for the reason that the sole ground of contest set up in this case was contained in paragraph 2 of the caveat filed, which set up a condition of mental derangement amounting to monomania or insane delusion as to his daughters, and no other objection whatever. The caveat nowhere alleges or contends in the pleadings that at the time of the execution of the will and codicil thereto the deceased was under the influence of intoxicating liquors, or that he was suffering mentally from the effect of intoxicating liquors previously consumed by him, and the instruction, as given, gave to the caveators the benefit of an entirely separate, distinct, and independent ground of caveat, which they did not plead, and for which in the caveat they did not contend, and, irrespective of any condition of monomania, permitted the jury to set aside and refuse probate of this will solely on the ground of the use of intoxicating liquor by deceased. (e) Movants say that said charge was error in so far as the court instructed the jury, 'If you find that the will does not express such rational desire, then you would find against the will,' because by this instruction the court, in effect, charged the jury that it should find against the will unless it should find that it expressed a rational desire of the testator to dispose of his property to his *relatives*. There is no requirement in law that a man should dispose of his property to his relatives,

and the court by the charge complained of directed the jury to make the will itself the test of the testator's mental capacity, and not all the evidence in the case. (f) And for the further ground movants complain of said charge, because it is nowhere alleged in the caveat that the alleged delusion or hallucination of the testator was the result of drunkenness, or that he was under the influence of liquor at the time of the execution of either the will or the codicil, or that the will or the codicil expressed the excited vagaries of a drunkard; and the court having previously and properly charged the jury that the will was freely and voluntarily made, it therefore could not have been an expression of the excited vagaries of the drunkard at that time, and such charge or charges had the effect of confusing the mind of the jury." The charge was authorized by the pleadings and evidence, and was not erroneous for any reason assigned.

9. The third (special) ground of the motion for new trial was as follows: "On the propounding of the will, where the question is insanity or monomania, the reasonableness or unreasonableness of the disposition of property by a will is always a question to be considered by the jury; and while, in and of itself, an unnatural or unreasonable disposition of his property by testator would not be sufficient to set aside a will, yet where the evidence raises a doubt in the minds of the jury as to the extent of the weakness of intellect of the testator, the reasonable or unreasonable disposition of the estate *should have weight* in the decision of the question." The grounds of exception to the charge are: "Because it was an expression of the opinion of the court, as to the effect of the reasonable or unreasonable disposition of the property, that it should have weight, whereas the court should have charged the jury that it might consider the reasonable or unreasonable character of the will in determining the issue in the case, or that it was a legitimate subject for their consideration, thus leaving to the jury the question of its weight, if any it had. Movants further object to said charge of the court, because the court should have further charged the jury in this connection, that, although they might find that the will was unreasonable, yet they could not on that account set the will aside, if they found that otherwise the testator had sufficient intellect to enable him to have a rational and decided desire to dispose of his property. Movant further assigns error

upon said charge, for the reason that the court charged the jury: 'I charge you that in cases of doubt as to the extent of the alleged monomania or partial insanity, if it exists, that the reasonableness or unreasonableness of the disposition of the estate should be considered by you in the decision of such question,' which charge was error for the reason that if there was a doubt as to the extent of the alleged monomania or partial insanity, as charged by the caveat, then it was the duty of the jury to find in favor of the will and order it to probate, for the reason that the burden of proving the monomania or delusional insanity was upon the caveators and not upon the propounder, and under the law the caveators were required to establish by a preponderance of the testimony both the fact of the monomania or delusional insanity or the objections alleged, and that it existed at the time of the making of the will, and that the will was a product of this monomania or delusional insanity, and if the caveators failed to carry this burden, or leave the matter in doubt, then it was the duty of the jury to find in favor of the probate of the will." The charge did not amount to expression of an opinion on the facts of the case by the judge, and was not erroneous for any other reason assigned.

10. There was no demurrer to the caveat, as in the case of *Dibble* v. *Currier,* 142 *Ga.* 855 (83 S. E. 949, Ann. Cas. 1916C, 1). In that case it was said "Our code recognizes such a thing as monomania as affecting testamentary capacity. Civil Code (1910), § 3840. But it means a mental disease, not merely the unreasonable conduct of a sane person. It is a species of insanity. Mania is a form of insanity accompanied by more or less excitement, which sometimes amounts to fury. The person so affected is subject to hallucinations and delusions, and is impressed with the reality of events which have never occurred and things which do not exist, and his actions are more or less in conformity with his belief in these particulars. Hall *v.* Unger, 11 Fed. Cas. 261, 263 (No. 5949). This mania may extend to all objects; or it may be confined to one or a few objects, in which latter case it is called monomania. It is not every delusion which will deprive one of testamentary capacity. It must be an insane delusion. A definition of such a delusion which has been approved by this court is that it exists wherever a person conceives something extravagant to exist which has no existence whatever, and he is incapable of

being permanently reasoned out of that conception. *Bohler* v. *Hicks,* 120 *Ga.* 800, 804 (48 S. E. 306). The subject-matter of the insane delusion must have no foundation in fact, and must spring from a diseased condition of mind. It does not mean merely a mistaken conclusion from a given state of facts, nor a mistaken belief of a sane mind as to the existence of facts." Under application of the principle stated in the foregoing decision, the evidence in this case was sufficient to show monomania of the testator at the time of executing the will and codicil as alleged in the caveat. The verdict finding against probate of the will was authorized by the evidence, and the judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting.*