WATKINS *v.* JONES *et al.,* executors.

No. 12077. NOVEMBER 10, 1937.

*H. L. Barnett, Y. A. Henderson,* and *J. H. Paschall,* for plaintiff in error.

*R. Carter Pittman, F. A. Cantrell,* and *J. G. B. Erwin,* contra.

GRICE, Justice. On application to probate the will of her father, S. A. Jones, Mrs. Annie Watkins filed a caveat on the following grounds: (1) "That at the time of making and executing the will offered for probate the testator was not of sound and disposing mind and memory." (2) "That said will by item 5 bequeathed to her a certain note in the sum of $110, with interest thereon, while at the time said purported will was executed this caveatrix, by and through her husband, Homer Watkins, and for her benefit and account, had paid to the testator said note in full; and said note having been fully paid, the testator had no interest therein and nothing to will or bequeath to this caveatrix; and for

this reason said will is null and void in so far as the same affects the rights of this caveatrix as an heir at law of his estate, because said bequest in item 5, as well as other parts of the will, were executed by the testator under a mistake of facts." (3) "That the testator at the time of executing said will had reached the age of 72 years, and for this reason his mind was weak, his memory poor, and his whole testamentary capacity totally destroyed as far as this caveatrix is concerned, because of an imaginary controversy had by caveatrix's husband, Homer Watkins, with testator prior to the date of executing said will, at the time the Sugar Valley Consolidated School was voted on, the testator being bitterly opposed to the consolidating of the school and issuing bonds, and caveatrix's husband being much in favor of said consolidation and said bond issue, and on account of this difference of opinion in administering the school affairs in said district the testator formed an insane hatred and dislike to her and husband of caveatrix, and on account of said mental condition his testamentary capacity so far as caveatrix is concerned was totally destroyed, and in making said will that testator executed same under a mistaken fact that the husband of caveatrix was his bitter enemy when in fact he was a dutiful son-in-law and greatly admired, loved, and respected his father-in-law; and because her said husband was opposing the testator in the proposed school bond election he mistakenly formed the opinion, mental delusion, that caveatrix was also opposing him in said matter, and for this reason was laboring under a mistake of fact and a further mistake of fact that said caveatrix had accused testator of killing her son's pig." (4) "Caveatrix shows that she did or said nothing to offend her father's, the testator's, feeling toward her during the election for the consolidated school at Sugar Valley and the issuing of bonds, but at all times greatly loved, admired, and respected her father, and had never done or said anything to him that would justify him to disinherit her as an heir at law of his estate, but that said testator because of his insane and utter dislike of caveatrix's husband he was under a mistaken fact that caveatrix was actively opposing the opinions and desires of her father in said school matter." (5) "For the reasons hereinabove set forth, caveatrix shows that the purported will was executed under a mistake of fact as

to her conduct and attitude toward the testator, and that said alleged will is inoperative, null and void as to this caveatrix; and as to her the testator died intestate."

At the conclusion of the testimony, the court directed a verdict for the propounders. The caveatrix moved for a new trial on the general grounds, and by an amendment of her motion complained of certain rulings on the evidence, and of the direction of the verdict. A new trial was refused, and she excepted.

■ The proof as to the testator's testamentary capacity generally was positive and uncontradicted. The three attesting witnesses swore affirmatively that at the time the instrument was executed he was of sound and disposing mind and memory; and as to this there was no issue, unless, as argued by counsel for plaintiff in error, the following from the testimony of Mrs. John Owens, J. F. Owens, B. Y. Dickey, and Dr. R. M. Gray, as quoted in their brief, was sufficient to take the case to the jury. Mrs. Owens testified: "Whether in my opinion he was capable of making a valid will, in so far as related to Mrs. Watkins, I believe if he had been right, he would have been making the will like the law was written. I don't think he was competent to make a valid will in so far as Mrs. Watkins was concerned. I don't think so." Mr. Owens testified: "I had known Mr. Jones for thirty-seven years, and have been in the family that long. I had been dealing with him and had been associated with him for that period of time, and was intimately acquainted with him. I know the state of his feeling toward Mrs. Watkins. From his feeling toward her that I mentioned awhile ago he was not competent to make a valid will in so far as it related to Mrs. Watkins. I just don't think, gentlemen, that he was." Mr. Dickey testified in part as follows: "If he was mad at his daughter and wouldn't speak to her, I doubt that he would have been competent to make a valid will as to her." Dr. R. M. Gray testified: "If Mr. Jones had no cause to become offended at his daughter, Mrs. Watkins, except that she and her husband were anxious to see a consolidated school, and on that account he became very incensed at her, and wouldn't visit her or permit her to visit him, and wouldn't speak to her for the rest of his life, for a period of about ten years; if that was true, in my opinion he was not such a person as would be competent to make a valid will in so far as that will related to Mrs. Watkins."

Giving to this evidence its full effect, all it means is that in the opinion of the witnesses a father who is angry with his daughter and so incensed at her that he would not visit her or permit her to visit him, and would not speak to her, is on that account incompetent to make a valid will in so far as it relates to the daughter. That a father will assume such an attitude towards a daughter is unfortunate; particularly when, so far as this record shows, his daughter did not deserve such treatment. But no court would be justified in refusing probate to a will executed by a person otherwise shown to be of sound mind, merely because of testimony of the character quoted above. The law does not say, because a man is narrow-minded, prejudiced, unforgiving, or even mean in his relations to some of his children, that he is incompetent to make a will, and the testimony of witnesses that he is incapable or incompetent because of such an attitude toward a child can not make an issue for the jury to pass upon.

No copy of the will is in the record, but it is fairly inferable that the testator divided his estate among his other children, and excluded the caveatrix, except that he bequeathed to her a note signed by her, which the testimony tended to show had been paid, though its possession had been retained by the testator. She seeks to have it adjudged that the will is inoperative as to her, because the will, she contends, was executed under mistakes of facts. The first of these related to the note. It is claimed that, since it was paid, for him to bequeath the note was a mistake of fact. She says next that the will was executed under the belief that her husband was the bitter enemy of the testator, when in fact the contrary was true; and she says this was a mistake of fact under which the will was executed. By amendment she added that her father at the time was laboring under a mistake of fact that she had accused him of killing her son's pig; and that at the time he had mistakenly formed the opinion that she was actively opposing her father in the matter of a proposed school-bond election, when as a matter of fact she was taking no open and active part in it. The Code, § 113-210, declares: "A will executed under a mistake of fact as to the existence or conduct of an heir at law of the testator is inoperative, in so far as such heir at law is concerned, but the testator shall be deemed to have died intestate as to him." The note referred to had certain credits entered on it,

but the total of these did not equal the amount of the note, which was in the possession of the testator. That this note was bequeathed, when the proof tended to show that it had been paid, does not show that the will was executed under a mistake of fact as to the conduct of the heir. The testator, from the very nature of the testimony offered in support of the contention that it had been paid, had as much knowledge on that subject as any one else; and even if it be true that he was mistaken about it, it was not a mistake of fact that involved the conduct of the caveatrix.

That ground of the caveat which sets up, as a matter of fact, that the testator believed the caveatrix was actively opposing the opinion and desire of her father in the school matter, when as a matter of fact she was taking no open and active part therein, does relate to a mistake of fact as to the conduct of an heir at law of testator, to wit, the caveatrix; but the evidence in the record does not support the contention of the caveatrix as to this matter. She testified that he became offended with her about the consolidated school, that they expressed conflicting opinions about it, and that he ordered her out of his house, and never spoke to her again; but there is no evidence tending to show that he was laboring under a mistake of fact on the subject; none to indicate she was taking no active and open part in the controversy, and none to indicate that he believed that she was, except that she testified that he and she and another were arguing the pros and cons of the controversy, and that in the midst of the argument he ordered her out of his house, and she went. There was no room for any mistake of fact, as her testimony relates to what happened, and there is no other on the subject.

The remaining ground is that in making the will her father was laboring under a further mistake of fact that the caveatrix had accused testator of killing her son's pig. There is an entire absence in the record of anything to support this ground of the caveat. The subject is hinted at in the testimony of Mrs. Owens, but no proof offered by that witness or any other to sustain the allegations of this ground. The result is that there was no evidence that would have justified the jury in finding that the will was the result of a mistake of fact as to the conduct of the heir.

■ The special grounds of the motion relate to rulings excluding testimony. Had it all been admitted, it could not change the

result, since none of it was sufficient to make an issue for the jury. It is needless to discuss it in detail. Some of it tended to show that the testator labored under a mistake of fact, but not a mistake of fact as to the conduct of the caveatrix. Other parts of it tended to show that it was unjust for her father to practically disinherit her in his will; that is, that the testator made an unreasonable disposition of his property. If there were other evidence in the record to raise a doubt as to testamentary capacity, the reasonable or unreasonable disposition of his estate should have much weight in the decision of the question. Code, § 113-205. But an unnatural or unreasonable disposition of his property is not of itself sufficient to justify a finding that the testator was lacking in testamentary capacity. *Dyar* v. *Dyar,* 161 *Ga.* 616 (131 S. E. 535); *Penn* v. *Thurman,* 144 *Ga.* 67 (86 S. E. 232).

*Judgment affirmed. All the Justices concur.*