## THOMPSON *v.* MITCHELL *et al.*

No. 13810. SEPTEMBER 12, 1941. REHEARING DENIED SEPTEMBER 26, 1941.

*G. A. Johns* and *A. M. Kelly,* for plaintiff.

*Joe Quillian,* for defendants.

GRICE, Justice. This is a contested-will case, the error assigned being the refusal to set aside a verdict in favor of the caveators. Though undue influence was one of the bases of the caveat, there was no evidence to support that ground, and the judge so instructed the jury. There can be in law no justification of a refusal to probate a will executed with the required formality, and freely and voluntarily, by a person not otherwise disabled or incompetent, but merely because a man had left practically all of his estate to one child, giving to the others a dollar apiece (*Watkins* v. *Jones,* 184 *Ga.* 831, 193 S. E. 889); or because the will appeared to be unreasonable and unfair (*Dyar* v. *Dyar,* 161 *Ga.* 615, 131 S. E. 535); or because the testator had some peculiarities and eccentricities (*Stancell* v. *Kenan,* 33 *Ga.* 56); or because the instrument was signed by an aged and decrepit person (*Hill* v. *Deal,* 185 *Ga.* 42, 193 S. E. 858); or by one in his last illness when his physical powers had almost left him (*Cook* v. *Washington,* 166 *Ga.* 329, 143 S. E. 409); or by one of weak intellect (*Gardner* v. *Lamback,* 47 *Ga.* 133); or by one shown to lack the necessary mental capacity at some time subsequent to the date of the execution of the will (*Hillyer* v. *Ellis,* 171 *Ga.* 300, 155 S. E. 180). But if there was evidence which if believed by the jury would have authorized them to reach the con-

clusion that the person signing the instrument did not at the time of its execution possess testamentary capacity, and their finding was against the propounder, and the verdict was approved by the trial court, we can not set it aside as being contrary to law. Counsel for plaintiff in error insist that the verdict must have been predicated on one or more of the premises referred to in the instances to which the foregoing citations relate, because every witness who saw the alleged testator on the day on which the instrument was signed testified that at that time he was in possession of his mental faculties, and that he possessed the necessary capacity for what he undertook to do. An examination of the record convinces us that, notwithstanding the evidence brought forward by the propounder which, standing alone, would have demanded a finding in his favor, the evidence as a whole was such as to create a conflict on the vital issue of fact which was submitted to the jury, and authorized them to find in favor of the caveators. A brother of the testator testified that forty years ago a tree fell on the testator; that after that he was just like a boy five or six years old; that after that he never did have mind enough to have a rational desire as to the disposition of his property and to understand the ties of those near to him by blood and affection. A first cousin testified: "He was more of the mind like a kid, in other words he did not think it'd be no harm to do anything, just idle-minded. I don't think he had enough mind to know how to handle business. I don't think at any time he had mind enough to have a rational desire as to make a disposition of his property by will." A physician who saw him the last time on December 16 (the instrument was executed on December 29) described the nature of his physical infirmity, and testified to his mental condition as of December 16, and from the nature of his ailment, and his mental condition at that time, gave it as his opinion that he did not have mind enough to have any rational desire as to the disposition of his property; and further: "I don't see how he could have got in any better mental condition after the 16th. Of course not impossible, but hardly probable. . . Mentally or physically I don't think he could get any better." Another physician who first saw him on January 3, 1938, testified: "From the observation of this patient given on January 3, I would not consider him to be a person in possession of his mental faculties to the extent that he would be able to make a will, that is, able

to have a rational desire as to the disposition of his property, that he could understand and appreciate the relationship of those close to him by ties of blood and affection. I would not consider him at any time to be in such a state. I do not consider him in such a state that on December 29th, about five days prior to the time I saw him, that he could have been in such a rational state of mind." Neither of these physicians saw him on December 29; but one examined him a few days before, the other a few days after. Both went into detail concerning the character of the sarcoma with which he was afflicted, its progressive character, the almost hopelessness of any improvement in his condition, its normal effect on one's mental powers, especially when, as here, it had reached its last stages. Their testimony aided the jury in determining what must have been his mental condition at the time he executed the instrument.

There was testimony from another physician, directly in conflict with these two; and still other witnesses who had known the testator swore directly to the contrary of the two non-expert witnesses, a portion of whose testimony is quoted above. There was also other opinion evidence pro and con on the same subject. The jury might have found in the alleged will itself internal evidence which bore unfavorably on the contention of the propounder.

We have singled out the testimony favorable to the caveators, because when we come to consider the general grounds of a motion for new trial our inquiry is not whether there was evidence which would have supported a different finding, but the only question we have to consider is whether there be any sufficient evidence to sustain the one that was rendered. For this reason we have pointed out such portions of the conflicting evidence as in our opinion were sufficient to afford a basis for the verdict.

Since, as indicated in the headnotes, we find nothing in the special grounds of the motion to require the grant of a new trial, it follows that the judgment must be and is

*Affirmed. All the Justices concur.*