SCOTT *v.* GIBSON.

No. 14247. SEPTEMBER 21, 1942.

504

*Steve M. Watkins* and *C. E. Hay,* for plaintiff.
*Lebbeus Dekle,* for defendant.

REID, Chief Justice. 1. The question for decision is whether the evidence was sufficient to authorize the verdict sustaining the caveat where the controlling contested issue was the mental capacity of the alleged testatrix to make the will. The propounder made out a prima facie case by testimony of the subscribing witnesses to the instrument, and presented proof that at the time the decedent executed the same she was of sound mind. On the contention that the alleged testatrix was mentally incapacitated to make the will the caveator offered only one witness, whose testimony related to the period between the time she became sick and her death several weeks later, sometime during which period the instrument was executed. The caveator's witness, after stating that he was a roomer in the decedent's home, testified as follows: "When I come home she was washing clothes, and she said she felt bad, and come over and fell down on the porch, and she was sick from then until she died. She was in bad condition when the women carried her in the house. She continued to grow worse so that she did not know what she was doing. . . I saw her daily and she grew steadily worse day by day. I would speak to her every day, and she did not answer, but only lay in bed. I saw her daily from the time she got ill until she died, and during that period she was

not in a condition to know what she was doing, or to make a will." There was no other proof on the subject, and no suggestion of mental weakness on the part of the testatrix, except as might be drawn from the foregoing.

The testimony of the witness that the testatrix "was not in a condition . . to make a will" states a legal conclusion, and, although admitted without objection, can not be considered in support of the verdict, since it is entirely without probative value. In *Smoot* v. *Alexander,* 188 *Ga.* 203 (2) (3 S. E. 2d, 593), it was said: "What is mental capacity to make a will is a question of law. On the trial of an issue of devisavit vel non, whether the alleged testatrix had mental capacity to make a will at the time of signing the paper is a question for decision by the jury, and a witness can not testify as to such legal conclusion. *Travelers Insurance Co.* v. *Thornton,* 119 *Ga.* 455 (46 S. E. 678); *Slaughter* v. *Heath,* 127 *Ga.* 747 (6) (57 S. E. 69, 97 L. R. A. (N. S.) 1); *May* v. Bradlee, 127 Mass. 414, 420; Nashville &c. R. Co. *v.* Brundige, 114 Tenn. 31 (84 S. W. 805). See also Brown *v.* Mitchell, 88 Tex. 350 (31 S. W. 621, 36 L. R. A. 64)." It will be noted that in the instant case the witness said in the same sentence, not only that the testatrix was in no "condition . . to make a will," but also that she was "in no condition to know what she was doing." In such a situation, only the portion last above may be considered, if it is otherwise sufficient as to time and circumstance. In *Morgan* v. *Bell,* 189 *Ga.* 432, 439 (5 S. E. 2d, 897), which contains a comprehensive statement, both from the Code and the decisions of this court, of the principles applicable to this case, it was said: "But where, as here, the non-expert witness in a portion of his testimony undertook to give his opinion on the ultimate legal question which it was for the jury to decide, by stating 'I don't think [the deceased] had the mental capacity to make a will,' such testimony, whether objected to or not, or whether it was accompanied by his reasons in support of such opinion, would be totally without probative value, the same as hearsay testimony, inasmuch as a witness is not permitted to give testimony at all on that ultimate question of law. However, the admission without objection of this illegal testimony, which was without probative value, would not operate to nullify the probative value of the proper testimony by this witness, by a physician, and by several non-expert witnesses,

upon the question of fact as to the mental condition of the testatrix at the time the will was executed, from which the jury were authorized to find that she was then unable to execute the will." So we are concerned only with the one narrow question as to whether this limited statement, considering the time to which the witness referred, the facts related upon which it was based, etc., would authorize the verdict. It is to be borne in mind, as pointed out in *Thompson* v. *Mitchell,* 192 *Ga.* 750 (16 S. E. 2d, 540) : "There can be in law no justification of a refusal to probate a will executed with the required formality, and freely and voluntarily, by a person not otherwise disabled or incompetent, but merely because a man had left practically all of his estate to one child, giving to the others a dollar apiece (*Watkins* v. *Jones,* 184 *Ga.* 831, 193 S. E. 889) ; or because the will appeared to be unreasonable and unfair (*Dyar* v. *Dyar,* 161 *Ga.* 615, 131 S. E. 535) ; or because the testator had some peculiarities and eccentricities (*Stancell* v. *Kenan,* 33 *Ga.* 56) ; or because the instrument was signed by an aged and decrepit person (*Hill* v. *Deal,* 185 *Ga.* 42, 193 S. E. 858) ; or by one in his last illness when his physical powers had almost left him (*Cook* v. *Washington,* 166 *Ga.* 329, 143 S. E. 409) ; or by one of weak intellect (*Gardner* v. *Lamback,* 47 *Ga.* 133) ; or by one shown to lack the necessary mental capacity at some time subsequent to the date of the execution of the will (*Hillyer* v. *Ellis,* 171 *Ga.* 300, 155 S. E. 180)."

In *Peavey* v. *Crawford,* 182 *Ga.* 782 (4) (187 S. E. 13), it was ruled: "Where the subscribing witnesses testified that the will was executed in proper form, and that the testatrix was of sound and disposing mind and memory, and their testimony upon this point was not controverted, a verdict probating the will was demanded." That case was brought to this court again after another trial (192 *Ga.* 371, 15 S. E. 2d, 418), where a state of facts very much like those in the present case was considered. It was said, in reference to the testimony of the witness relied upon to sustain the caveat on the ground of want of mental capacity: "At the time the instrument was signed, this witness was thirteen years old. She testified: 'Having known Mrs. Crawford before, and observing her at that time, she was not capable of disposing of her property. I don't believe she recognized what she was doing at that time.' The context shows that by the words 'at that time' this witness

referred, not to the moment or hour, but to the day on which the paper was signed. Mrs. Crawford was sick. The witness also testified: 'Mrs. Crawford did not recognize me that day. She did not recognize me the day before, and didn't recognize me after that until about a week afterward. At that time she was very ill. I spoke to her when I went in the room, but she didn't reply— didn't say anything at all to me. She was just lying there, and sometime she didn't speak at all.' The witness was in the room only a part of the time. She testified to no conversation with the testatrix, and gave no facts on which to base her opinion that Mrs. Crawford was not capable of disposing of her property. Such testimony can not break down the positive testimony of the subscribing witnesses that *at the time the will was executed,* the testatrix was capable of making a testamentary disposition of her property. See *Hillyer* v. *Ellis,* 171 *Ga.* 300 (155 S. E. 180); *Hill* v. *Deal,* 185 *Ga.* 42 (193 S. E. 858). The evidence demanded the verdict." See also *Wood* v. *Lane,* 102 *Ga.* 199, 200 (29 S. E. 180). This line of decisions, of which many more could be cited, recognizes not only that an insane person may make a will during a lucid interval (Code, § 113-204) but that a person may be feeble and suffering from an illness that to-day might cause sufficient reason to be wanting, and yet to-morrow or at another time even in the same day sufficient reason (mental capacity) would be present. They therefore hold that the issue is confined to the mental condition of the testator "at the time the will was executed." In *Boland* v. *Aycock,* 191 *Ga.* 327, 329 (12 S. E. 2d, 319), the question at issue was one as to undue influence, but the court said: "It must also be operative at the time the will is executed, and not merely at some other time. . . While evidence of mental condition or acts of undue influence at other times, not too remote, may be received to illustrate conditions existing at the time the will was executed, still after all the question is, was the testator in condition to make a will at the time he made it? *Brown* v. *Kendrick,* 163 *Ga.* 149 (135 S. E. 721); *Cook* v. *Washington,* 166 *Ga.* 329, 348 (143 S. E. 409)."

In the case now before us the only evidence relied upon to break down the will was in substantially the same language as used by the witness in the *Peavey* case, supra. The witness testified to no conversations or other conduct or circumstances which would show

mental incapacity *at the time the will was executed.* This is not to hold that a witness must have been present at the execution of the will, to give reliable evidence on such an issue, but that the evidence must show that he knew the mental condition at that time. Such was not the case here. The judgment overruling the motion for new trial must be *Reversed. All the Justices concur.*