WALTERS, next friend, *v.* WALTERS *et al.*

Under the pleadings and evidence in the case the court did not err in directing a verdict for the propounders.

No. 2245. MAY 13, 1921.

Probate of will. Before Judge Hodges. Franklin superior court. August 23, 1920.

*W. M. Smith, S. C. Upson,* and *Dorsey Davis,* for plaintiff in error.

*J. H. & Emmett Skelton* and *W. R. Little,* contra.

HILL, J. L. W. Walters executed his last will and testament, May 24, 1915, which was witnessed by G. C. Hays, C. J. Culpepper, and W. R. Little. Testator died in December, 1915, and Allen J. Walters and William Walters, the executors named in his will, filed a petition in the court of ordinary of Franklin County, to probate the will in solemn form. At the January term, 1916, of the court of ordinary Lucy Walters, as next friend of Evie Walters et al., filed a caveat to the probate of the will, on two grounds: (1) That W. L. Walters was not of sound and disposing mind and memory at the time he executed his will. (2) Undue influence exercised by William Walters over the testator. The case was appealed by consent to the superior court, and was tried at the September term, 1919. After evidence was offered by each side the court, on motion of counsel for propounders of the will, directed a verdict in their favor. A motion for new trial was made by the caveators, on the usual general grounds, and because the court erred in directing a verdict in favor of the propounders against the caveators, and in not submitting the issue to the jury empaneled

to try the case, and because the evidence did not demand a verdict in favor of the propounders. The sole question, therefore, is whether the court erred in directing a verdict for the propounders. All of the evidence produced by the propounders tended to show that the testator, at the time of the. execution of the will, was a man of sound and disposing mind and memory, and .that no undue influence was exerted over the testator in the execution of the will. The only witnesses who testified for the caveators, whose evidence might be considered as raising an issue for the jury to pass upon, were Drs. J. H. Crawford and J. M. Freeman. The latter testified: " I knew L. W. Walters in his lifetime, and lived about five miles from him and saw him pretty often. I had occasion to know about his mental and physical condition shortly prior to his death, I was his family physician most of the time — a great deal of the time — for ten or fifteen years prior to his death. His physical condition for the last few years of his life was weak; he was sick most of the time — an incident of some other cause than old age. I treated him up until just a few weeks before he died. I do not remember how long it was, but it was two or three weeks. He had heart trouble, leakage of the heart, and had hardening of the arteries, and he had diabetes. The effect of all this was to weaken him generally and physically, and weaken his body and mind, I should say I saw him two or three weeks before he died. Then he went to Bowersville to get Dr. Shields. . . In May, 1915, I considered his mental condition weak — his mental condition was not very good. I could not say whether in my opinion he had mind enough to have a rational and decided opinion about what he wanted to do about business transactions — he might have just voluntarily told anything that he wanted done. I saw him all through the year. I could not say as to his resistance power — mental power; the old man was pretty weak. You know you take a man in his condition — heart trouble, diabetes, hardening of the arteries, and he is naturally in a weakened condition. With reference to what effect that would have upon his mental powers, i. e., giving directions and whether he could not resist the importunities of others, of course a man in that condition could not resist very much, and he would be easier influenced, of course. . . He was partially rational in his conversation; sometimes he would be rational and sometimes he would not be so much so; when he was not so much so he would talk at

random. I could not say he was not more positive than any other man; he was not a vacillating character; he was just a common average man. He was average in his intellect in his younger days, but I did not consider him so in his latter days, because I had treated him for these different diseases which impaired his mind. Heart trouble impaired his mind to a certain extent; it weakened his body and mind — brain. Heart trouble weakens the brain; if you weaken the nervous system you weaken the whole system. . . I didn't consider him quite crazy — plumb crazy." Dr. Crawford testified, among other things: "I have been seeing him all of my life. I knew more about his mental condition in 1914 than I did in 1915. I never saw him alone at any time. Always when I would see him and I would speak sometimes and he would speak, but sometimes he would not, and sometimes he would notice me and then again he would not. . . He had a general complication of trouble at the time. He had Bright's disease, and it would naturally harden the blood-vessels. That has a whole lot to do with the mental state — it deteriorates the brain; that is what some people call softening of the brain, and each year that would grow worse. I don't think his mental condition could have improved any in 1915; it was worse, if anything, from my standpoint than in 1914. In regard to what extent his mind had been impaired, his nervous system, you might say, was impaired, and body very weak, naturally the brain was weak — it was very weak, and he was incapacitated to transact business." On cross-examination he testified: "I first treated Mr. Walters in 1911; that was the only time I treated him as a physician. I don't remember what time it was in 1911. I don't remember whether it was in the early part of the year or not. I lived about five miles from him. I had not been his family physician, and had not been in his home but once as a physician. . . From what I have stated with reference to my knowledge of the diseases of Mr. Walters, I would say his mental condition was growing worse all the time. He was constantly attended by his son, Will; they were together all the time. He went along to take care of him, I suppose. Mr. Walters looked like he needed some one to look after him. . . It was in 1915 that he died. He had it for two or three years before when I saw him, and was gradually growing worse. In my opinion he had not altogether reached a state of insanity. In regard to him having lucid intervals, he would know

34

people and would not have any sense about anything else — he would grow crazy on certain things. I never stated Mr. Walters was crazy. I don't believe, from the diseases that he had to contend with, he would be a man of sound mind enough to write a will. He might have sense enough to tell a lawyer to write it for him, if he had been permitted."

We do not think this evidence is sufficient to carry the case to the jury. Neither witness testifies that the testator was not of sound and disposing mind and memory at the time of his executing or acknowledging the will. See *Terry* v. *Buffington,* 11 *Ga.* 337 (56 Am. D. 423). It is true that for the purpose of shedding light upon the state of testator's mind when the will was made, evidence as to his mental condition, both before and after that period, may be produced. *Terry* v. *Buffington,* supra. But, from a careful reading of the evidence for the caveators, we do not think that it shows mental incapacity in the testator at the time of the execution of the will. In the case of *Potts* v. *House,* 6 *Ga.* 324 (11) (50 Am. D. 329), it was ruled that "Neither eccentricity nor imbecility of mind, nor extreme old age, nor being deaf and dumb, whether from birth or the calamity be superinduced, nor incapacity to make contracts for the purchase and sale of property, are sufficient to invalidate a will." It was also held in the *Potts* case: "Influence in procuring a will to be made, to be undue, must amount to moral coercion; it must destroy the free agency of the testator and constrain him to do what is against his will, but what he is unable to refuse;" etc. The evidence for the caveators is not sufficient to bring this case within either of the rulings stated above. The law is that the court may direct a verdict where there is no conflict in the evidence, and that introduced, with all reasonable deductions or inferences therefrom, demands a particular verdict for the party entitled thereto. Civil Code (1910), 5926. From a careful review of the evidence in this case, the court did not err in directing a verdict in favor of the propounders.

*Judgment affirmed. All the Justices concur.*