## HARRIS *v.* HARRIS, administrator.

1. Where lands are purchased by a mother and son, each paying half of the purchase-money under an agreement between them that the son shall represent the mother in closing the contract of purchase, and take a deed to them jointly, and the son procures a deed to the land but causes it to be made to himself alone, an implied trust will arise in favor of the mother to an undivided one-half interest in the land. Civil Code, §§ 3739, 3780; *Pound* v. *Smith,* 146 *Ga.* 431 (4) (91 S. E. 405).

2. The petition sufficiently alleged fraud and undue influence upon the part of the grantee, to be the basis of a suit for cancellation by the administrator upon the estate of the grantor.

3. A suit was brought by the heirs at law of an intestate, for the purpose of obtaining relief as indicated in the preceding notes. The defendant demurred to the petition, on the ground that the suit could not be maintained by the heirs at law, but should have been brought by an administrator. To avoid the question so raised by demurrer the plaintiffs dismissed their action without prejudice, and thereafter an administrator upon the estate of the intestate instituted an action against the defendant on the same grounds and for the same relief as involved in the former suit by the heirs. *Held,* that the defendant was estopped in the suit by the administrator from denying the right of the administrator to bring the action. *Neal Loan &c. Co.* v. *Chastain,* 121 *Ga.* 500 (49 S. E. 618).

4. The foregoing notes dispose of the controlling questions in the case.

No. 2749. SEPTEMBER 27, 1922.

Equitable petition. Before Judge Tarver. Bartow superior court. June 25, 1921.

J. I. Harris, as administrator upon the estate of Mrs. M. E. Harris, instituted an equitable action against Jesse Y. Harris, seeking to set up an implied trust to an undivided one-half interest in a residence called the Milner property, and to have an

accounting for rents, etc. The plaintiff in the action also sought to cancel a voluntary deed from the intestate to the defendant, purporting to convey an undivided two-fifths interest in a farm called the Dobbs place, the other three-fifths of which was owned by the defendant, on the ground of fraud and undue influence: An accounting was also sought as to the rents of the farm, and for the proceeds of the sale of certain portions of the land. The exception is to a judgment overruling a demurrer to the petition as amended, except as to two paragraphs of the petition. There was no cross-bill of exceptions. In the briefs of the plaintiff in error it is said: "There are only three main questions to be determined: first, does [the petition] sufficiently allege a case of fraud; second, are the allegations of the petition sufficient to make a case of undue influence; and third, is he estopped by reason of a former suit by him and the other heirs at law covering the same subject matter?" Examination of the record shows that the above states the controlling questions, and others will not be specifically mentioned.

*J. R. Whitaker* and *Maddox, McCamy & Shumate,* for plaintiff in error. *Neel & Neel,* contra.

ATKINSON, J. 1. The ruling announced in the first headnote refers to so much of the petition as seeks to set up an implied trust to an undivided one-half interest in the Milner property. The petition alleged a cause of action for the relief prayed for, relatively to this property; and as to this phase of the case none of the grounds of demurrer were meritorious.

2. The next question relates to cancellation of the deed from the plaintiff's intestate to an interest in the Dobbs farm. As to this matter the petition substantially alleges the following. The intestate died on June 21, 1919. The petition was filed on December 21, 1920, and alleged that on September 26, 1913, the defendant (a son of plaintiff's intestate) procured his mother to execute to him a deed prepared by his counsel, conveying her a two-fifths interest in a described farm (the Dobbs farm) for a consideration of one dollar and love and affection; that said instrument was procured by fraud and undue influence practiced by the son on the mother; that prior to the procurement of such deed confidential relations existed between them; that the son was a strong, active man, shrewd and prosperous in business affairs,

while the mother had grown old and infirm of health, and had a very limited education and practically no business experience; that during her husband's lifetime she relied absolutely on him, and after his death had relied on her older sons and her son-in-law to manage and transact her business matters for her until the defendant, her youngest son, had about reached his majority, when she entrusted the control and management of her business affairs to him; that she and this son resided in her home alone, until the Milner house and lot, being the property referred to in the first division, was purchased, when they moved into it, and resided there together as their home; that from that time forward the son had exclusive charge of his mother's affairs, managing the same as he saw fit, she trusting and confiding in him completely, and depending on him for advice in all her property or business interests; that the mother was always extremely anxious that she should never become a burden on any of her children, of which fact the son was aware; that he craftily made use of the same for the purpose of unduly influencing her to make such deed to him, stating and complaining to her that her share of the rents from said farm was inadequate for her support, and that other arrangements would have to be made, intending thereby to create, and thus actually creating, the impression on her that she was becoming a charge on him; that the mother, by reason of her confidence in him and her dependence on him, accepted his crafty statements without question, although her share of said rents, as he well knew, was more than sufficient to supply all her needs, according to the economic manner in which she lived; that the mental capacity and will power of the mother had become weakened and impaired to some extent by age and infirm health, while the son was of vigorous mental capacity and strong will power, on which account the mother was incapable of resisting the dominating influence of the son in persuading and urging her to sign the deed; that the son fraudulently created the false impression on his mother's mind that the income of her estate was inadequate for her support and that her support was an unfair burden on him, thereby arousing her anxiety and fears that she was becoming a burden on him; that he thereupon " urgently and unduly influenced her " to make said deed; that none of her other children or her confidential friends had any knowledge of said transaction; that the son intentionally

carried on said transaction with his mother secretly, and persuaded her to say nothing about it to other members of the family, to prevent her from receiving independent advice or counsel as to her rights and duties in said matter; that the son by the means aforesaid took undue advantage of the mother, and, by undue influence exerted on her in the fraudulent manner aforesaid, finally procured her to sign said deed; that the mother was of advanced age, infirm of health, and of weakened will power and mentality, and was under the domination of the son, by reason whereof she was unable to resist the undue influence of the son fraudulently exerted by him upon her in the manner and under the circumstances aforesaid; that she signed said deed by reason of such fraud and undue influence, and would not otherwise have signed the same; that the mother never clearly understood the meaning or legal effect of said deed, and the defendant never explained to her the legal effect thereof; and that she afterwards continued to claim such lands as her own. In *Potts* v. *House,* 6 *Ga.* 324 (50 Am. D. 329), it was held: " Influence in procuring a will to be made, to be *undue,* must· amount to moral coercion; it must destroy the free agency of the testator and constrain him to do what is against his will, but what he is unable to refuse." See also *Walters* v. *Walters,* 151 *Ga.* 527 (107 S. E. 492) ; *Elliott* v. *Gary,* 153 *Ga.* 665 (4), (8) (112 S. E. 900). In 6 R. C. L. 637, § 53, it is said: " Assent obtained through undue influence may invalidate a contract. What constitutes undue influence is a question depending upon the circumstances of each particular case." In *Frizzell* v. *Reed,* 77 *Ga.* 724, it was held: " Where it appeared that the owner of property was greatly afflicted in body and mind from disease, that she had little or no will power, and that she was greatly under the influence of a relative who obtained a conveyance of the property from her, although the evidence as to her sanity or insanity was conflicting; on a proceeding by her to set aside such conveyance, in order to sustain it, it should be made to appear that the transaction was fair, honest, and free from fraud and undue or improper influence of the controlling mind. Such a transaction will be scrutinized closely by the courts; and if there be found the slightest scintilla of fraud, it will be set aside." Applying these principles, the petition sufficiently alleged fraud and undue influence as a basis for cancellation.

3, 4. The rulings announced in the third and fourth head-notes do not require elaboration.

> *Judgment affirmed.    All the Justices concur.*