WARE *v.* HILL.

No. 17813.   SUBMITTED APRIL 14, 1952—DECIDED JUNE 10, 1952—
REHEARING DENIED JULY 15, 1952.

Colley & Orr, Clement E. Sutton and L. C. Groves, for plaintiff in error.

Earle Norman and Fred D. Hamrick Jr., contra.

ATKINSON, Presiding Justice. (After stating the foregoing facts.) ■ All the special grounds assert in substance that the court erred in failing to charge the jury that, if the evidence showed that the testatrix left a child surviving her, then a verdict should be rendered for the propounder, in that in such circumstances the caveatrix, Mrs. Hill, would not be an heir at law, because under the undisputed evidence Mrs. Hill was a sister of the deceased, and there was some testimony that Mrs. Tinie Keeter Martin was a daughter of the testatrix, and the failure to so instruct the jury as claimed was error injurious, prejudicial, and harmful to the propounder.

These grounds are insubstantial and without merit, for the reason that it appears from the record that, in the petition of the propounder to probate the will in solemn form, it was alleged that Mrs. Hill was an heir at law of the testatrix, and the court had before it the record in the case, wherein Mrs. Hill and Mrs. Martin filed separate caveats to the probate of the will in the court of ordinary; and when the will was probated in that court, they filed a joint appeal to the superior court, and in Mrs. Martin's caveat she sought, in addition to the setting aside of the will, a decree adjudicating that she was the child of Mrs. C. E. (Minnie Josie) Keeter by reason of virtual adoption. The only reason why the propounder insists that the court should have charged in this regard was that Mrs. Martin, while testifying as a witness for the caveatrix, stated as a conclusion that the testatrix was her mother. Such statement, standing alone, was not sufficient to raise any issue of fact on the question of whether Mrs. Hill was or was not an heir at law of the testatrix.

■ The only issue submitted to the jury was whether or not the testatrix, at the time of the execution of the will, had sufficient mental capacity to make a will. The caveatrix admitted a prima facie case, and aside from that the propounder introduced evidence sufficient to sustain a jury verdict if found for the

propounder. The jury having found for the caveat, the question here presented is whether or not there was sufficient evidence to sustain the verdict.

"Where testamentary capacity is the issue, the controlling question to be determined is the condition of the mind at the time of the execution of the will. As tending to illustrate the mental condition at that time, evidence of such condition at other times may be received, but where it is sought to establish testamentary incapacity by such evidence, it does not controvert the positive testimony of the subscribing witnesses unless it would be proof of testamentary incapacity at the time the will was signed." *Fehn* v. *Shaw*, 199 *Ga.* 747 (35 S. E. 2d, 253), and citations. This rule does not mean that, in order to overcome the positive testimony of the subscribing witnesses, it is essential to establish incapacity by someone who was present when the will was signed or who saw the testator the day the will was executed. Evidence as to the state of mind of the testator prior to and subsequent to the date of the execution of the will may illustrate the incompetency of the testator at the time of its execution. Where a condition of incapacity is shown to exist prior to the execution of a will, and it is further shown that this condition continues for a period of time subsequent to the date of execution, it is evidence showing incapacity at the time of execution, and controverts the positive evidence of the subscribing witnesses, thus making an issue of fact for the jury. See *Manley* v. *Combs*, 197 *Ga.* 768 (1) (30 S. E. 2d, 485); *Pantone* v. *Pantone*, 206 *Ga.* 305 (1) (57 S. E. 2d, 77), and citations; *Brock* v. *State*, 206 *Ga.* 397 (1) (57 S. E. 2d, 279), and citations. There being such evidence here, and the jury having found in favor of the caveat, the trial judge did not err in denying the motion for new trial.

*Judgment affirmed. All the Justices concur, except Wyatt, Head, and Almand, JJ., who dissent.*

ALMAND, Justice, dissenting. I dissent from the ruling that the evidence is sufficient to have authorized a finding by the jury that the testatrix did not have sufficient mental capacity to execute the will, and from the judgment of affirmance. The caveatrix assumed the burden of proving lack of testamentary capacity. The testimony of the subscribing witnesses and others

who gave their opinion as to the mental condition of the testa-trix on the day the will was executed, that she did have mental capacity to execute the will, was not overcome by the non-expert witnesses testifying on behalf of the caveatrix, whose opinions were based upon facts from which no legal conclusion could be drawn that the testatrix did not have mental capacity to execute the will. All that their testimony amounted to was that the testatrix, after her stroke, could not recall names of persons or places, and that she did not have the same disposition that she had before the stroke. Such evidence was insufficient to over-come the positive testimony of the witnesses who saw and observed her at the moment the will was executed.

It is true that cases of this character must stand or fall on their own facts, and previous decisions dealing with the sufficiency or insufficiency of evidence are of little value; but reference to these decisions shows that this court has set aside verdicts, finding in favor of caveats on the ground of mental incapacity, which were based upon evidence stronger than that in the instant case. *Peavey* v. *Crawford,* 182 *Ga.* 782 (187 S. E. 13, 107 A. L. R. 828); *Martin* v. *Martin,* 185 *Ga.* 349, 353 (195 S. E. 159); *Brumbelow* v. *Hopkins,* 197 *Ga.* 247 (29 S. E. 2d, 42). The solemn and sacred right of one while in life to dispose of her own property by will should not be nullified after her death upon such weak and inconclusive evidence as appears in this case.

HEAD, Justice, dissenting. In the present case the writer finds himself not in agreement with the rulings made by the majority as to the extent and legal effect of the evidence offered by the caveatrix, and at the same time disagreeing with the majority as to the applicable and controlling rules of law. It is the opinion of the writer that the rulings of the majority in this case violate principles of our codified law and full-bench decisions of this court, which, if given effect, would demand a judgment for the propounder of the will.

The applicable Code sections provide as follows: "An incapac-ity to contract may coexist with a capacity to make a will. The amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the party to have a decided and rational desire as to the disposition of his proper-ty. His desire must be decided, as distinguished from the

wavering, vacillating fancies of a distempered intellect. It must be rational, as distinguished from the ravings of a madman, the silly pratings of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard." § 113-202. "An insane person generally may not make a will. A lunatic may, during a lucid interval. . ." § 113-204. "Eccentricity of habit or thought does not deprive a person of the power of making a will; old age and weakness of intellect resulting therefrom does not, of itself, constitute incapacity. If that weakness amounts to imbecility, the testamentary capacity is gone. In cases òf doubt as to the extent of this weakness, the reasonable or unreasonable disposition of his estate should have much weight in the decision of the question." § 113-205.

In the majority opinion it is stated: "The jury having found for the caveat, the question here presented is whether or not there was sufficient evidence to sustain the verdict." This statement is followed by a statement of the law taken from *Fehn* v. *Shaw,* 199 *Ga.* 747, which is followed by the statement: "This rule does not mean that, in order to overcome the positive testimony of the subscribing witnesses, it is essential to establish incapacity by someone who was present when the will was signed or who saw the testator the day the will was executed."

The writer is in doubt as to what the majority intended to hold by the above statement. If the statement is to be construed as a ruling that mental incapacity to make a will may be determined by testimony of incapacity at some time prior to, or subsequent to, the will, standing alone and unsupported by any other facts as to the condition of the testator's mind on the date the will was executed, then it is the opinion of the writer that such statement is erroneous, and in conflict with repeated rulings of this court, beginning with the decision in *Terry* v. *Buffington,* 11 *Ga.* 337 (56 Am. D. 423). The first three headnotes of that case are as follows: "Testamentary capacity is to be determined by the condition of the testator's mind at the time of his executing or acknowledging the will. For the purpose of shedding light upon the state of the testator's mind when the will was made, evidence of its condition, both before and after the period may be produced. As an independent fact, proof of incapacity at one period, is inadmissible to impeach a will made at another."

In *Hall* v. *Hall*, 18 *Ga.* 40, 46, it was said: "The prima facie proof is, that this instrument was legally signed by the witnesses in the presence of the testator; for the attesting witnesses so certify by their attestation, and so swear in the evidence which they have given. If this is negatived, it should be by clear and definite contradiction. This does not appear in the record; but resort is had to vague and indirect inference." In *Morris* v. *Stokes*, 21 *Ga.* 552, this court approved the following charge: "Be the testator wise or unwise, yet he is capable of willing his property, unless totally deprived of reason."

In *Slaughter* v. *Heath*, 127 *Ga.* 747, 753 (57 S. E. 69, 27 L.R.A. (N.S.) 1), this court quoted with approval from *Gardner* v. *Lamback*, 47 *Ga.* 133, 192, the following language: "To make one incapable of making a will from insanity, he must be *'non compos mentis,'* there must be a 'total deprivation of reason.' However old, feeble, weak minded, capricious, notionate he may be, if he 'be able to have a decided and rational desire as to the disposition of his property,' he is not wanting in testamentary capacity."

In *Gardner* v. *Lamback,* supra, and preceding the quotation above, this court, speaking through Justice McCay, stated the reason why the law so carefully guards the right to make a will, in the following language: "The right to say who shall, after the death of the owner, have his property, is a right long held precious in the history of English law. A large majority of wills are made in the last hours of life, a time necessarily of pain, trial and disturbance. And it is a wise provision of the law that whilst it takes great precaution to prevent fraud and imposition, it does not withdraw the testamentary privilege until the reason itself be gone. It is a precious right, and one that should be guarded with jealous care, that the aged and infirm, the weak minded and eccentric shall have this security for care and attention on a sick bed. And it may be truly said, without any harsh criticism on human nature, that many a fired brain has been cooled by gentle hands, and many a death bed cheered and watched over with kind care, which, but for this tender care of the law for this testamentary right, would have been neglected and deserted."

In *Griffin* v. *Barrett*, 183 *Ga.* 152, 164 (187 S. E. 828), it was

held: "As to the quantum of mentality, the weak have the same rights as the prudent and strongminded to dispose of their property by will, and anything less than a total absence of mind does not destroy that capacity. *Potts* v. *House*, 6 *Ga.* 324, 328 (50 Am. D. 329); *Terry* v. *Buffington*, 11 *Ga.* 337, 345 (56 Am. D. 423); *Hall* v. *Hall*, 18 *Ga.* 40 (4); *Morris* v. *Stokes*, 21 *Ga.* 552 (5), 571; *Maddox* v. *Simmons*, 31 *Ga.* 512, 527; *Gardner* v. *Lamback*, 47 *Ga.* 133, 193; *Mason* v. *Taylor*, 162 *Ga.* 149 (132 S. E. 893). An incapacity to contract is not inconsistent with the capacity to make a will. Code, § 113-202; *Wood* v. *Lane*, 102 *Ga.* 199, 201 (29 S. E. 180). The condition of the testator's mind *at the time of the execution of the will* determines whether or not he can make a valid will. *Terry* v. *Buffington*, supra; *Walters* v. *Walters*, 151 *Ga.* 527, 530 (107 S. E. 492); *Brown* v. *Kendrick*, 163 *Ga.* 149, 168-9 (135 S. E. 721), and cit.; *Cook* v. *Washington*, supra."

In the full-bench decision of *Whitfield* v. *Pitts*, 205 *Ga.* 259, 270, 272 (53 S. E. 2d, 549), Mr. Chief Justice Duckworth, speaking for the court, stated in part: " 'If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice.' *Slaughter* v. *Heath*, 127 *Ga.* 747 (1) (57 S. E. 69, 27 L. R. A. (N. S.) 1); *May* v. *May*, 175 *Ga.* 693 (2) (165 S. E. 617); *Manley* v. *Combs*, 197 *Ga.* 768, 779 (4) (30 S. E. 2d, 485). The testamentary capacity is to be determined by the condition of the testator's mind at the time he executed the will. *Martin* v. *Martin*, 185 *Ga.* 349, 352 (195 S. E. 159); *Fehn* v. *Shaw*, 199 *Ga.* 747, 754 (35 S. E. 2d, 253)."

Under the quoted Code sections and the foregoing decisions of this court, the time to determine the testamentary capacity of the testator is on the date of the execution of the will, and not at some unrelated time; and while it is correctly stated in the majority opinion that evidence of a mental condition prior to, and subsequent to, the execution of the will may tend to illustrate the incompetency of the testator at the time of its execution, such evidence, standing alone, is insufficient to overcome the positive, definite, and unequivocal testimony of the subscribing witnesses.

The majority opinion states: "Where a condition of incapacity

is shown to exist prior to the execution of the will, and it is further shown that that condition continues for a period of time subsequent to the time of execution, it is evidence showing incapacity at the time of execution and controverts the positive evidence of the subscribing witnesses, thus making an issue of fact for the jury."

The writer disagrees with the above statement in its entirety, based upon decisions of this court heretofore cited, and particularly the ruling in *Whitfield* v. *Pitts,* supra. However, if it could be assumed that the above statement enunciated a correct principle of law, there was not one scintilla of evidence in this case which authorized the submission of an issue to the jury. The first three witnesses testifying for the caveatrix, as shown by the statement of facts, testified positively that they did not know the condition of the mind of the testatrix on August 21, 1948, the date of the execution of the will; and they did not testify to any facts tending to show that the testatrix was insane or non compos mentis, nor did they state as their opinion that she was insane or non compos mentis. They did not testify as to the condition of her mind on the date of the execution of the will, or any date subsequent thereto. There is a conclusion in the testimony of one of the witnesses as to the incapacity of the testatrix, which is unsupported by any fact.

The fourth and final witness for the caveatrix under the statement of facts set out in the opinion, testified to no fact tending to show, or supporting the conclusion of the witness, that the testatrix was incapable of making a will, and the original record as to the testimony of this witness, beginning with her statement as to the testatrix attending the funeral of her deceased husband, a short time prior to the execution of the will, is as follows: "The day of the week that Mrs. Keeter returned to Lincolnton after attending the funeral was on Friday, in the afternoon. I was at her home when she returned. Her condition I would say on her return home from the funeral *was very bad, she was tired and upset.* I saw Mrs. Keeter also the following afternoon, Saturday. I was there in her home when she returned from Lincolnton, where she had been driven in an automobile, and as far as I remember those who went with her on that trip to Lincolnton were Mr. Walter N. Ware, who was driving the car,

and Mrs. J. C. Monteith and Mrs. J. S. Sherling. I ate supper at Mrs. Keeter's home that Saturday night, and was with Mrs. Keeter for about three hours that night. Nothing was mentioned to me that night by anyone that Mrs. Keeter had signed a will that day, nor did I know anything about it. No member of the family up to this date have mentioned to me that Mrs. Keeter signed a will. On the night that Mrs. Keeter returned from her husband's funeral, I don't think she was capable of making a will or knowing what a will was. I don't think Mrs. Keeter was ever capable of making a will after she had the stroke. I don't think she was capable of making a will or knowing anything about her property after that Saturday night I have just referred to."

The sole fact testified to by this witness as to any incapacity of Mrs. Keeter to execute a will was that, on the day before the will was executed, upon returning from the funeral of her husband in North Carolina, her condition "was very bad, she was tired and upset." It is not strange or unusual that a person of declining health, with the hand of old age laid upon her, should be "tired and upset" after traveling many miles by automobile in the heat of summer from the place where the mortal remains of her departed husband had been consigned to its resting place, until time shall be no more. The hallowed memories of a sacred bond, forever broken as an earthly relationship, and the contemplation of life without the love and kindnesses of a departed companion, may well have upset one for whom "earth's last picture" is already taking form upon the canvas of life. The further statement of this witness, while on cross-examination, that "I can not say that I knew anything about her condition during that day" (the date the will was executed), disproves any knowledge on the part of this witness of any fact tending to show that the mental state of the testatrix was "bad" or that she did not have testamentary capacity under our rules of law. The further testimony of this witness, "I don't think she was capable of making a will or knowing anything about her property after that Saturday night I have just referred to," has no probative value because it is not based upon facts testified to by the witness, and is in violation of the rule that "whether the alleged testatrix had mental capacity to make a will at the

time of signing the paper is a question for decision by the jury, and a witness can not testify as to such legal conclusion." *Smoot* v. *Alexander*, 188 *Ga.* 203 (3 S. E. 2d, 593).

In *Martin* v. *Martin*, 185 *Ga.* 349, 353, it was held: "A jury issue as to the mental capacity of the decedent at the time of her execution of the alleged will in this case was, therefore, not created by proof merely that, three years before such excution, she had a stroke of partial paralysis, with uremic poisoning and hallucinations, and 'didn't have any mind *much*,' but without proof that her condition was one of total, habitual insanity, such as mentally incapacitated her from making a will at the time of its subsequent execution, where all the evidence showed that the seriousness of such former condition was only temporary; where the testimony for the propounders showed capacity; and where the additional testimony for the caveator failed to show incapacity at the time of the execution of the will, under the tests of the Code, §§ 113-202, 113-204, 113-205."

In *Orr* v. *Blalock*, 195 *Ga.* 863, 865 (25 S. E. 2d, 668), Mr. Chief Justice Duckworth, speaking for the court, summed up the evidence offered by the caveators to set aside the will in that case as follows: "The caveators offered a number of witnesses who testified to having seen the testator before the will was executed, one on Tuesday or Wednesday before it was made on Saturday, another on the afternoon of the day the will was executed, another about four or five days before, another six or eight months before, and another two years before. But none of them saw the testator when the will was made. They testified in general that the testator, when they saw him, was mentally incapable of having a rational desire to dispose of his property. The only reasons given to support this inexpert testimony were that the testator was old, crippled, rambled in his conversations, jumping from one subject to another, and that he did not recognize the witness who saw him on the afternoon of the day the will was executed, although the witness had seen him and associated with him many times theretofore. This witness under cross-examination admitted that he had testified as a witness against the testator in 1940, but said he did not think the testator was offended at him because of such testimony." In division 4 of the opinion, at page 867, it was said:

"The evidence is insufficient to show lack of testamentary capacity. *Peavy* v. *Crawford*, 182 *Ga.* 782 (187 S. E. 13, 107 A. L. R. 828); *Griffin* v. *Barrett*, 183 *Ga.* 152 (187 S. E. 828); *Hill* v. *Deal*, 185 *Ga.* 42 (193 S. E. 858); *Thompson* v. *Mitchell*, 192 *Ga.* 750 (16 S. E. 2d, 540); *Scott* v. *Gibson*, 194 *Ga.* 503 (22 S. E. 2d, 51); Code, §§ 113-202, 113-204, 113-205." The summary of the evidence in *Orr* v. *Blalock*, supra, is particularly in point with the evidence in this case, in that it is identical in general character.

The majority opinion cites three decisions by this court as supporting its ruling. The first is *Manley* v. *Combs*, 197 *Ga.* 768, headnote 1 of which case is as follows: "Where there is conflicting evidence as to testamentary capacity to make a will, and sufficient evidence to establish the absence of testamentary capacity, the verdict of the jury finding in favor of the caveat will not be set aside on the ground that there is a lack of evidence to support the verdict." The writer fully agrees with the rules stated in headnote 1 of the above decision. Upon an examination of the facts of that case, it appears that the attorney who prepared the will was present, and testified as to certain conduct of the testatrix, at the time of its execution. This testimony was supported by positive medical testimony to the effect that the testatrix was insane, and that the type of insanity was probably dementia praecox. An examination of *Manley* v. *Combs*, supra, will show positive, absolute testimony of inability to execute a will by reason of insanity, and the holding in that case has no application to the facts in the present case.

The majority opinion cites *Pantone* v. *Pantone*, 206 *Ga.* 305 (1). In headnote 1 of the *Pantone* case it is stated that "evidence as to such a previous state of mind or subsequent state of mind may be sufficient to authorize a jury to find against contractual capacity at the time the deed was executed." The facts in that case show that the grantor of the deed was a patient in the Veteran's hospital, that he was a very sick man, and that he was " 'confused', 'irrational', 'disoriented', 'incontinent', 'semi-stuporous', or 'talking at random' on the dates of May 11, 13, 15, 20, 21, 22, 26, June 3, 4, 5, 8, 9, 11, 12, 13, 14, 15, 16, 17, 19, 20, 23, 25, 26, 27, 28, 30, July 2, 8, 9, 16, 17, 21, 22, 23, and 25." The deed under attack was executed on June 24. The

writer agreed to the quotation above set forth from the *Pantone* case for the reason that it requires more mental capacity to contract than is required to make a will. Indeed, incapacity to contract may coexist with mental capacity to make a will. Code, § 113-202. The writer could not anticipate that a rule applicable in determining mental capacity to contract would thereafter be extended to mental capacity to make a will. In the present case, however, the evidence does not even substantially measure up to the testimony in the *Pantone* case, and that case does not support the ruling of the majority in the present case.

In *Brock* v. *State*, 206 *Ga.* 397, cited in the majority opinion, Mr. Chief Justice Duckworth, speaking for the court, laid down the rule that it was error to refuse to permit witnesses to state their opinion that the accused was insane, based upon a state of facts testified to by them. In the present case, no witness offered to testify that the testatrix was insane, or that she had any condition bordering upon insanity, and no sufficient facts are testified to by any witness in the present case to support a conclusion that the testatrix did not have mental capacity to make a will. The *Brock* case, therefore, has no application to the facts of the present case.

In *Spivey* v. *Spivey*, 202 *Ga.* 644 (44 S. E. 2d, 224), Mr. Justice Candler, for the court, set out the medical testimony and the testimony of other witnesses for the caveators, and in conclusion stated (at. page 655): "The mind of the testator could have been 'bad,' or such that he could not 'transact business to his advantage,' and still he could have possessed sufficient intelligence to enable him to have a 'decided and rational desire as to the disposition of his property.' The opinions of the nonexpert witnesses that the mind of the testator was 'bad' were not based on such facts and circumstances as to authorize the conclusion that he was totally devoid of the capacity to have a 'decided and rational desire as to the disposition of his property.' The test is whether he had such mental capacity at the time the will was actually executed. The testimony of both the expert and non-expert witnesses was insufficient to overcome the positive testimony of two of the subscribing witnesses that at the time the will was *executed* the testator apparently had testa-

mentary capacity. The evidence therefore demanded a verdict in favor of the propounder, and the trial court erred in denying the motion for new trial."

While the rulings of this court in *Spivey* v. *Spivey*, supra, were not concurred in by a full bench, and therefore are not binding in the present case, the *Spivey* case follows the rules of law laid down in *Orr* v. *Blalock*, supra, which is a full-bench decision and binding upon this court. The evidence in the present case (under the rulings in *Orr* v. *Blalock*, supra, and other decisions cited) was insufficient to make any issue as to the mental capacity of the testatrix, and the trial court should have directed a verdict for the propounder.