## 33425. YUZAMAS v. YUZAMAS.

HILL, Justice.

Joseph Cashmir Yuzamas began living with Rosa Mary Clark in 1971. In 1973, he was divorced from his second wife. On February 23, 1976, he executed his will, referring to Rosa Mary Clark as his wife and naming her as his sole beneficiary. Following his death on August 2, 1976, Rosa Mary Clark Yuzamas petitioned the Probate Court of Jones County to admit the will to probate in solemn form. Joseph Charles Yuzamas, testator's son who had not seen or spoken with his father since 1967, filed a caveat. The probate court admitted the will to probate and the caveator appealed to the superior court where a de novo jury trial was begun. At the close of the evidence, the trial court directed a verdict for the propounder, Rosa Mary Clark Yuzamas. The caveator appeals, urging that the grant of the directed verdict was error.

On appeal, caveator contends that the test for deciding whether the evidence raised an issue of fact to be determined by the jury is whether there was "the slightest evidence of aberration of intellect" as set forth in Code § 113-106 which provides: "A testator, by his will, may make any disposition of his property . . ., he may bequeath his entire estate to strangers to the exclusion of his wife and children, but in such case the will should be closely scrutinized, and, upon the slightest evidence of aberration of intellect . . . probate should be refused." Caveator relies upon *English v. Shivers*, 220 Ga. 737, 740 (141 SE2d 443) (1965); *Bowman v. Bowman*, 205 Ga. 796, 811-812 (55 SE2d 298) (1949); and *Deans v. Deans*, 171 Ga. 664, 681-682 (156 SE 691) (1931).

The propounder argues that the evidence shows without contradiction that she was the common law wife of the testator, that as his wife she was not a stranger within the meaning of Code § 113-106, that hence the "slightest evidence of aberration of intellect" test of Code § 113-106 is not applicable here, that the traditional test of testamentary capacity is therefore applicable here, and that the grant of a directed verdict was proper under the traditional test of testamentary capacity. Propounder relies on *Fehn v. Shaw,* 199 Ga. 747 (35 SE2d 253) (1945); *Walters v. Walters,* 151 Ga. 527 (107 SE 492) (1921); and *Terry v. Buffington,* 11 Ga. 337 (1852).

After the subscribing witnesses testified favorably as to the execution of the will and the mental capacity of the testator at the time of execution, the propounder testified that she was the testator's common law wife and lived with him as such from 1971 until his last illness. This testimony was corroborated by testator's attorney who testified that testator considered propounder to be his wife at the time he discussed the preparation of his will. Caveator offered the testimony of testator's second wife who testified that she was divorced from testator in 1973, that she talked with him by phone in early 1976, that she asked him why he was living the way he was living, that he said that he had his own living quarters but needed someone to look after him, but that she never asked if he was living with the propounder and he never discussed marriage in relation to the propounder. This testimony did not raise an issue as to common law marriage. (In fact, the existence of such marriage does not appear to have been seriously contested at trial.)

We therefore find that Code § 113-106 and its aberration test are not applicable here. Similarly, *English v. Shivers,* supra, and other cases applying Code § 113-106 are not applicable here.

Caveator next argues that there was an issue of fact as to whether testator had the necessary capacity to execute a will under the traditional test. Code § 113-202. Here, the two subscribing witnesses gave positive testimony that testator did have testamentary capacity at the time the will was executed. Under *Fehn v. Shaw,* supra, 199 Ga. at 754, evidence of a testator's mental

condition at times other than the signing of the will "does not controvert the positive testimony of the subscribing witnesses unless it would be proof of testamentary incapacity at the time the will was signed." In this case, there is no such proof. One doctor, who treated testator for problems associated with alcoholism from December 29, 1975, until January 21, 1976 (one month before the will was signed), testified that testator suffered from an "organic brain syndrome, which means that his mind isn't working as well as it did before he got sick," and that this was manifested by repetition of the same question. He referred to testator as irrational at that time, but also stated he recognized people and knew where he was: "He was oriented but inattentive perhaps ..." This testimony did not amount to testimony that testator lacked testamentary capacity either in January 1976 or thereafter.

A second doctor, who did not begin treatment of testator until July 20, 1976, five months after the will was executed, testified that in July the testator was suffering from hepatic encephalopathy, caused by cirrhosis or liver failure, and that he did not have testamentary capacity at that time. When asked how long the testator had had this condition, the doctor stated: "I can't really say. Usually, somebody can have a mild degree of liver disfunction or liver problem and not have much effect on the mind ... So, of course, I couldn't go back in time and say exactly when he reached that point. It could have been a few weeks or days before that." This testimony falls short of proof that the lack of testamentary capacity existing in July had existed five months earlier when the will was executed. Compare *Mallis v. Miltiades,* 241 Ga. 404 (1978), where the caveators produced evidence that the testator lacked testamentary capacity before and after the date of execution of the will and the doctor who testified as to testator's mental state prior to execution of the will stated that if he were like others suffering from severe chronic brain disease and senile psychosis, he would not have been of sound mind on the date he signed the will. See also *Ware v. Hill,* 209 Ga. 214, 218 (71 SE2d 630) (1952), and *Estes v. Perkins,* 239 Ga. 636 (238 SE2d 423) (1977).

580

There was not in this case sufficient evidence to controvert the testimony of the subscribing witnesses *(Fehn v. Shaw,* supra), and the trial court did not err in directing a verdict for the propounder. See also *Cobb v. Thompson,* 236 Ga. 261 (223 SE2d 658) (1976).

*Judgment affirmed. All the Justices concur.*

ARGUED APRIL 11, 1978 — DECIDED JUNE 28, 1978 — REHEARING DENIED JULY 20, 1978.

*Minsey & Kenmore, Sylvia G. Haywood,* for appellant.

*William C. Randall, Alphonso Bailey,* for appellee.