## S10A0941. BURCHARD v. CORRINGTON et al.

(700 SE2d 365)

MELTON, Justice.

In 1982, Ruth Hope Burchard prepared a Will. Seventeen years later, with the assistance of Henry Burchard,[1] Ruth prepared a new will, in which Henry, who would have received nothing under the 1982 Will, was to receive approximately one-seventh of Ruth's estate. Following Ruth's death, Henry filed a Petition to Probate the 1999 Will in the Probate Court of Walker County, and three of Ruth's heirs — her great niece, Gayle Burchard Corrington, and her great nephews, Gary Burchard and Douglas Davis (hereinafter collectively the "Burchards") — filed a Caveat to the probate of the 1999 Will. Following a hearing, the probate court entered an order in favor of Henry. The Burchards appealed to the Superior Court of Walker County, and, following a bench trial, the superior court entered an order finding that Ruth did not have the mental capacity to make the 1999 Will and that Ruth was under undue influence at the time that the Will was created. The superior court accordingly declared the 1999 Will invalid, prompting Henry to appeal. For the reasons that follow, we affirm.

Viewed in the light most favorable to the superior court's decision, the record reveals that, in April 1996, the Burchards visited Ruth, and, at that time, Ruth appeared puzzled and had difficulty recognizing these familiar members of her family. Two weeks later, the Burchards visited Ruth again, and Ruth appeared disoriented and confused, and she had no recollection of the Burchards' prior visit to her. Soon after this visit, on May 1, 1996, Ruth was in a car accident in which she suffered severe injuries. At the time of the accident, Ruth was 84 years old. A doctor who examined Ruth after the accident noted that she was disoriented, confused, and not competent to make any decisions, legal or otherwise, on her own behalf. After her release from the hospital, Ruth moved into Henry's home. In August 1996, Henry set up a conservatorship in Tennessee establishing himself as Ruth's guardian, based on findings by the Chancery Court of Hamilton County that Ruth was "a disabled person [who was] disoriented and confused, and [whose] prognosis [was] uncertain." A year later, Ruth's guardian ad litem interviewed her, and opined that, "[o]bjectively speaking, [Ruth was] incapable of caring for herself, ostensibly lacking the presence of mind necessary to prepare her meals, administer prescribed medication and attend to personal hygiene." A year and a half later, on February 1, 1999, Henry and his wife took Ruth to see attorney Barry Benton in

---

[1] Henry Burchard is the son of Ruth's deceased brother-in-law.

Calhoun, Georgia, to execute a new Will that was prepared by attorney Benton. Under this new 1999 Will, Henry would receive over $350,000.

Three months later, Henry and his wife successfully petitioned the Walker County Probate Court to have the Tennessee conservatorship transferred to Georgia, keeping them as Ruth's guardians, and to have Ruth declared incapable of managing her estate because she "lack[ed] sufficient . . . capacity to make significant responsible decisions concerning [her] person." In connection with this petition, a doctor examined Ruth and determined that she was exhibiting mental and physical signs that were consistent with Alzheimer's dementia. Ruth died on January 7, 2006.

1. Henry contends that there is no evidence to support the superior court's determination that Ruth lacked the testamentary capacity to make the 1999 Will. See, e.g., *Norman v. Hubbard*, 203 Ga. 530, 533 (1) (47 SE2d 574) (1948) ("[I]f it be certain from all the testimony that *at the time of the execution of the instrument* there was no want of testamentary capacity, the instrument offered will not be refused probate on the ground of lack of testamentary capacity.") (emphasis supplied). See also OCGA § 53-4-11 (a) and (d) ("Testamentary capacity exists when the testator has a decided and rational desire as to the disposition of property . . . [and] [n]either advancing age nor weakness of intellect nor eccentricity of habit or thought is inconsistent with the capacity to make a will.").

However, "[e]vidence of incapacity at a reasonable time prior to and subsequent to a will's execution creates an issue of fact as to capacity at the time of execution . . . [and a fact finder must] determine capacity where there is any genuine conflict of evidence regarding the testator's capacity." (Citations omitted.) *Sullivan v. Sullivan*, 273 Ga. 130, 131 (1) (539 SE2d 120) (2000). Indeed,

> it is [not] essential to establish incapacity by someone who was present when the will was signed or who saw the testator the day the will was executed. Evidence as to the state of mind of the testator prior to and subsequent to the date of the execution of the will may illustrate the incompetency of the testator at the time of its execution. Where a condition of incapacity is shown to exist prior to the execution of a will, and it is further shown that this condition continues for a period of time subsequent to the date of execution, it is evidence showing incapacity at the time of execution, and controverts the positive evidence of the subscribing witnesses, thus making an issue of fact.

*Ware v. Hill*, 209 Ga. 214, 218 (2) (71 SE2d 630) (1952). Moreover,

"[o]nly the testimony favorable to Caveator[s] need be considered, because the sole question before us is whether there is sufficient evidence to sustain the [factfinder's determination]." (Citations and punctuation omitted.) *Sullivan,* supra, 273 Ga. at 131 (1).

Here, despite the fact that one of the witnesses to the 1999 Will testified that she believed that Ruth was competent to execute the 1999 Will at the time that she executed it, the factfinder "was not bound to reach the same conclusion based on the evidence before it." *Sullivan,* supra, 273 Ga. at 131-132 (1). Specifically, doctors who personally examined Ruth both before and after her execution of the 1999 Will established that Ruth was disoriented and confused, not competent to make any decisions for herself, and had been exhibiting symptoms consistent with Alzheimer's dementia. There was further evidence that, during the three years leading up to the execution of the 1999 Will, Ruth was a consistently confused and disoriented person who lacked the mental ability to care for, or make decisions for, herself. Moreover, three months after the execution of the 1999 Will, evidence supported the conclusion that Ruth continued to be incapacitated, as the propounders of the Will themselves successfully sought to have Ruth declared incapable of managing her estate based on her incapacity to make decisions for herself.

Based on this evidence, the trial court was authorized to conclude that the 1999 Will was invalid based on Ruth's lack of testamentary capacity to make it. See *Ware,* supra, 209 Ga. at 218 (2). Because there was some evidence to support the trial court's determination, we will not disturb that determination here. See id. See also *Sullivan,* supra, 273 Ga. at 132 (1); *Borenstein v. Blumenfeld,* 250 Ga. 606 (4) (299 SE2d 727) (1983).

2. In light of our disposition in Division 1 that evidence supported the trial court's conclusion that the 1999 Will was invalid due to Ruth's lack of testamentary capacity, we need not address the question whether evidence also supported the trial court's conclusion that Ruth was subjected to undue influence that would have likewise invalidated the 1999 Will. See, e.g., *Borenstein,* supra, 250 Ga. at 609 (5) ("Inasmuch as there was sufficient evidence to support a finding of lack of testamentary capacity, we are not required to treat the propounder's contentions relative to the sufficiency of the evidence to support a finding [on the remaining basis for invalidating the will]").

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 20, 2010.

*John W. Rhyne, Jr.,* for appellant.

*Joseph E. Willard, Jr., Ann W. Fiddler*, for appellees.